**TREEHOUSE LAW, LLP**
Ruhandy Glezakos (SBN 307473)
Benjamin Heikali (SBN 307466)
Joshua Nassir (SBN 318344)
2121 Avenue of the Stars, Suite 2580
Los Angeles, CA 90067
Telephone: (310) 751-5948
rglezakos@treehouselaw.com
bheikali@treehouselaw.com
jnassir@treehouselaw.com

*Attorneys for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Tricia Bennett and Mai Pham, on behalf of themselves and all others similarly situated,

              Plaintiffs,

       v.

Orgain, LLC and Nestle Health Science U.S. Holdings, Inc.,

              Defendants.

CASE NO.: **'23CV1877 RSH SBC**

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Tricia Bennett and Plaintiff Mai Pham ("Plaintiffs"), on behalf of themselves and all others similarly situated bring this Class Action Complaint against Orgain, LLC and Nestle Health Science U.S. Holdings, Inc. ("Defendants" or "Orgain"), based upon their personal knowledge and the information and belief of their counsel.

## **INTRODUCTION**

1.     This class action seeks to challenge the false and deceptive labeling of Orgain's nutritional shakes, protein shakes, and protein powders (the "Products").[1]

2.     During the relevant class period, Orgain has misled reasonable consumers about the amount of grass-fed protein in its Products. Specifically, the Products all have a front label representation about the number of grams of grass-fed protein per serving in the Products. For example, the front label of the Orgain Kids Protein Shake unequivocally states— "8g GRASS-FED PROTEIN." *See image on next page*. This representation leads reasonable consumers to believe the Product contains 8 grams of ***grass-fed*** protein per serving.

3.     Unbeknownst to consumers, neither the Kids Protein Shake—nor any of Products at issue—contain the amount of grass-fed protein represented on the front label of the Products. This is because the represented amount of grass-fed protein is actually a ***blend*** of grass-fed protein ***and*** organic protein.

---

[1] The term Products is fully defined in paragraph 26 below.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

4.      "Organic" protein, however, is not the same as "grass-fed" protein, as organic protein comes from cows fed grain and corn.[2]

5.      Organic protein from cows fed grain is not what reasonable consumers expect when they see the representation "grass-fed."

6.      Indeed, on Orgain's own website, it defines "grass-fed protein" as protein that does not come from cows fed grain:

> **Grass fed protein** refers to animal products like dairy, whey, and collagen peptides *obtained from animals fed their natural diet of grass rather than GMO-grains like corn and soy* (along with hormones and antibiotics). Diets and additives like these disrupt grazing animals' development and healthy digestion and can even be stored in the human body after consumption. Grass fed whey, dairy, meat, and collagen are cleaner protein sources because when grazing animals eat what they biologically need, what they produce is more nutrient dense and beneficial to our health. Orgain is committed to using the highest quality grass fed whey in our whey protein powder because we know you need the best to feel your best. All of Orgain's collagen and whey protein is grass fed, with no added sugar and definitely no antibiotics or hormones.[3]

---

[2] *Grass Fed vs. Organic Beef*, Pre (Feb. 19, 2023), https://www.eatpre.com/blogs/gather/grass-fed-vs-organic-beef ("The main difference in the organic label vs. the grass fed label on beef is that organic is specifically referring to the ways that the cattle cannot be raised. Organic means that the cattle may not be raised in feedlots for extended periods of time, and cannot be over-crowded or kept in dirty or unsanitary conditions. So, organically produced beef can still be fed grain & confined to a feedlot for portions of their life."); Maria Robinson, *Pasture-Raised vs. Grass-Fed vs. Organic Beef: What's the Difference?*, GoodRx Health (June 20, 2023), https://www.goodrx.com/well-being/diet-nutrition/grass-fed-vs-organic-beef-labels-guide ("Organic beef can be fed grains (so long as they are organic). So if you're looking for grass-fed beef, you'll need more than just this label.").

[3] *Plant Based vs Grass Fed Protein - What's The Scoop?*, Orgain Blog (Mar. 6, 2019), https://orgain.com/blogs/news/plant-based-vs-grass-fed-protein-whats-the-

7.     Thus, even Orgain's own definition supports Plaintiffs' understanding of the term "grass-fed protein."

8.     From a nutritional standpoint, 100% grass-fed protein has more Omega-3s and conjugated linoleic acid (CLAs) than conventional whey protein. This is important to consumers as the higher level of Omega-3s is believed to fight inflammation, benefit the immune system, improve exercise performance, and prevent chronic conditions such as heart disease and diabetes.[4] Thus, the belief that the Products are made with only grass-fed protein is material to consumers.

9.     Plaintiffs and other consumers purchased the Products and paid a price premium relying on Orgain's false and deceptive labeling of the Products.

10.    Had Plaintiffs and other consumers been aware that the protein in the Products was not entirely grass-fed protein, they would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiffs and Class members have been injured by Orgain's deceptive business practices.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed

---

scoop#:~:text=Grass%20fed%20protein%20refers%20to,along%20with%20hormones%20and%20antibiotics

[4] Shahzadi Devje, *Grass-Fed Milk: Everything You Need to Know*, Healthline (Jan 24, 2022), https://www.healthline.com/nutrition/grass-fed-milk#bottom-line; T.R. Dhiman, *Conjugated linoleic acid content of milk from cows fed different diets,* 82 J. Dairy Science 2146, 2146 (1999), https://pubmed.ncbi.nlm.nih.gov/10531600/.

under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendants are citizens of states different from at least some members of the proposed Classes, including Plaintiffs.

12.  This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the markets within California, through their sale of the Products and other products in California and to California consumers.

13.  Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District. Specifically, Plaintiff Tricia Bennett resides in this District and she purchased one of the Products in this District.

## **PLAINTIFFS**

14.  Plaintiff Tricia Bennett is a citizen of California and currently resides in Valley Center, California. During the relevant class period, including a recent purchase in August 2023, Plaintiff Bennett purchased Orgain's Chocolate flavored Kids Protein Shake from a Costco in San Marcos, California. Based on the "8g GRASS-FED PROTEIN" claim on the front label, Plaintiff Bennett reasonably believed the Product contained 8 grams of grass-fed protein. Had Plaintiff Bennett known the truth about the Product, she would not have purchased it, or would have paid significantly less for it.

15.     Plaintiff Mai Pham is a citizen of California and currently resides in Garden Grove, California.   During the relevant class period, including a recent purchase in or around May 2023, Plaintiff Pham purchased the 24-pack chocolate flavored Kids Protein Shake from a Costco in Garden Grove, California. Based on the "8g GRASS-FED PROTEIN" claim on the front label of the Kids Protein Shake, Plaintiff Pham reasonably believed the Product contained 8 grams of grass-fed protein per serving. Had Plaintiff Pham known the truth about the Kids Protein Shake, she would not have purchased it, or would have paid significantly less for it.

16.     Despite Orgain's misrepresentations, Plaintiffs would purchase the Products, as labeled, if Products contained the amount of grass-fed protein represented on the front label. Absent an injunction of Orgain's deceptive labeling, Plaintiffs will be unable to rely with confidence on Orgain's labeling of the Products in the future. Furthermore, while Plaintiffs currently believe the Products' labeling is inaccurate, Plaintiffs lack personal knowledge as to Orgain's specific business practices, and thus, they will not be able determine the source of the Products' protein in the future. This leaves doubt in the Plaintiffs' minds as to the possibility that at some point in the future the Products could be made in accordance with the grass-fed protein representations. This uncertainty, coupled with their desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Orgain from making the alleged misleading representations. In addition, other Class members will continue to purchase the Products, reasonably

but incorrectly believing that the Products contain the stated amount of grass-fed protein.

**DEFENDANTS**

17.     Defendant Orgain, LLC is a corporation with its principal place of business in Irvine, California and incorporated in Delaware. Orgain, LLC is responsible for the formulation, manufacturing, labeling, and sale of the Products nationwide, including in this District.

18.     Upon information and belief, the deceptive labeling of the Products originated in Irvine, California. Specifically, Orgain maintains its "corporate office and *innovation center*" at 16851 Hale Ave., Irvine, California 92606 ("Irvine Office"), and holds itself out as having its primary place of business in Irvine, California, including on Orgain's website, Facebook page, and Product packaging.[5]

19.     Indeed, Orgain built a 25,000-square-foot space in Irvine, California that was designed specifically for Orgain's brand, which encompasses offices for nearly 100 employees and has a "test kitchen" where Orgain employees can create and sample new Products.[6]

---

[5] *Is Orgain made in the United States?*, Orgain, https://support.orgain.com/hc/en-us/articles/360046379132-Is-Orgain-made-in-the-United-States- (last visited Oct. 10, 2023); *Orgain*, facebook, https://www.facebook.com/drinkorgain/ (last visited Oct. 10, 2023).

[6] *Orgain Offices – Irvine*, OFFICE SNAPSHOTS (2021), https://officesnapshots.com/2021/08/10/orgain-offices-irvine/; *Orgain's Wellness-*

20.     Additionally, Orgain's development, marketing and labeling decisions are made at the Irvine Office. In fact, Orgain is currently seeking to fill several in-person positions at its California office including roles related to research and development, and brand management.[7]

21.     For the aforementioned reasons, Orgain's principal place of business is in California, the final decisions regarding representations made on product labels were made in California. Thus, Orgain's misconduct originated in California.

22.     Defendant Nestle Health Science US Holdings, Inc. is a corporation with its principal place of business in Bridgewater, New Jersey and incorporated in Delaware. Nestle Health Science US Holdings, Inc. is responsible for the formulation, manufacturing, labeling, and sale of the Products nationwide, including in this district.

---

*Centric Headquarters*, https://hhendy.com/video-orgains-wellness-centric-headquarters/ (last visited Oct. 10, 2023).

[7] *Jobs in Irvine California, Director, R&D*, LGBT CONNECT.com, https://lgbtconnect.com/job/director-r-d-irvine-california-2067074 (last visited Oct. 10, 2023) (Orgain is hiring Director, R&D in Irvine to "Design[] and develop[] products under the [Ready-to-Drink] platform . . . ."); *Job Posting for **Manager, Brand Management** at **Orgain***, salary.com, https://www.salary.com/job/orgain/manager-brand-management/j2023051707183132263966?utm_campaign=google_jobs_apply&utm_source=google_jobs_apply&utm_medium=organic (last visited Oct. 10, 2023) (Brand manager would be required to be in the office a minimum of 2-3 days a week, and among other things is responsible for "contribut[ing] to overall brand strategy" including by leading "package design development through deep brand, consumer and competitive understanding").

23.     Nestle Health Science US Holdings, Inc. acquired a majority stake in Orgain and now represents Orgain as one of their brands.[8]

## **FACTUAL ALLEGATIONS**

24.     Orgain is a nationwide nutrition and wellness corporation, that sells its products online and through major retailers across the United States. Defendants are responsible for the production of Orgain Products.

25.     Orgain sells a wide range of products, including protein powders, bars, drinks, supplements, and kids nutrition shakes. The Products challenged herein are sold direct to consumers and through third-party retailers throughout California.

26.     The full list of Products at issue in this case are as follows: (1) Kids Protein Organic Nutritional Shake - Fruity Cereal, (2) Kids Protein Organic Nutritional Shake – Vanilla,  (3) Kids Protein Organic Nutritional Shake – Chocolate, (4) Kids Protein Organic Nutritional Shake – Strawberry, (5)  26g Organic Protein™ Grass Fed Protein Shake, (6) Organic Nutrition Shake – Sweet Vanilla Bean, (7) Organic Nutrition Shake – Creamy Chocolate Fudge, (8) Organic Nutrition Shake – Iced Café Mocha, and (9) Organic Nutrition Shake – Strawberries & Cream.

27.     Unfortunately for consumers, Orgain has resorted to false and

---

[8] *Nestlé Health Science to acquire majority stake in Orgain*, Nestle (Feb. 02, 2022), https://www.nestle.com/media/pressreleases/allpressreleases/nestle-health-science-to-acquire-majority-stake-orgain; *Our Brands,* Nestle Health Science https://www.nestlehealthscience.us/our-brands (last visited Oct. 10, 2023)

deceptive labeling to boost sales and increase profits from the Products, all at the expense of unsuspecting consumers.

28.     Specifically, the Products all have a front label representation about the number of grams of grass-fed protein per serving in the Products. For example, the front label of the Orgain Kids Protein Shake states "8g GRASS-FED PROTEIN." *See image below*. This representation leads reasonable consumers to believe the kids nutritional shake contains 8 grams of **grass-fed** protein per serving.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

29.   Orgain's other grass-fed Products have substantially similar grass-fed protein representations on the front label of the Products (e.g., "16g GRASS-FED PROTEIN," "26g GRASS-FED PROTEIN" ). *See images below*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

30.     Based on the grass-fed protein representations, reasonable consumers purchased the Products believing they were receiving a specific amount of grass-fed protein per serving.

31.     Unbeknownst to consumers, the protein in the Products is not entirely grass-fed protein. Instead, the protein in the Products comes from a protein **blend** that is only **partially** sourced from grass-fed cows, with the remainder of the protein being from "organic" cows.

32.     However, "organic" is not synonymous with "grass-fed," as the term organic simply means that a cow must have some **access** to a pasture—not that they are necessarily grass-fed.[9] Organic dairy cattle that eat organic grain produce organic milk, but it's not grass-fed milk.[10] Indeed, even when conventional or organic cows are raised eating grass, they can live the last few months of their lives on a fully grain and soy-based diet to fatten them up before slaughter.[11]

---

[9] *Grass-fed vs. Organic Meat: What's the Difference*, Cleveland Clinic healthessentials (July 18, 2019), https://health.clevelandclinic.org/grass-fed-vs-organic-meat-whats-the-difference/  ("**Diet:** Organic beef is raised on a blended diet of grain and corn, and grazing on grass."); *The Truth About Whey: Grass Fed vs Organic Whey*, Nutrology (Apr. 8, 2020), https://nutrologyonline.com/blogs/news/the-truth-about-whey-grass-fed-vs-organic-whey-nutrology ("'organic' refers to the 'elimination of herbicides and pesticides with plant production,' which is great for plant-based proteins and produce, but has very little to do with the quality of dairy.").

[10] Devje, *supra* footnote 4.

[11] Nancy Matsumoto, *Is Grass-Fed Beef Really Better For The Planet? Here's The Science*, npr (Aug. 13, 2019),

33.     In comparison, grass fed cows are raised outdoors eating only grass on open pastures, whereas other protein, including organic protein, comes from cows that "can and usually do receive supplemental grains."[12]

34.     From a nutritional standpoint, grass-fed protein has significantly more Omega-3s and conjugated linoleic acid, which in turn benefit the immune system, improve exercise performance, and help to prevent conditions such as heart disease and diabetes.[13] One study found that "[c]ows grazing pasture and receiving ***no supplemental feed*** had 500% more conjugated linoleic acid in milk fat than cows fed typical dairy diets." [14]

35.     Moreover, because grass-fed cows are raised outdoors eating only grass on open pastures, entirely grass-fed cows are raised more humanely than other cows, and provide certain environmental benefits that organic and conventional cows do not.[15] Specifically, grass-fed cows can "promote biodiversity, healthy soil, and clean water systems" while conventional dairy cows rely on grains and other "large-scale

---

https://www.npr.org/sections/thesalt/2019/08/13/746576239/is-grass-fed-beef-really-better-for-the-planet-heres-the-science

[12] Nick English, *What's The Difference Between Grass-Fed Whey Vs. Regular Whey?*, BarBend (July 14th, 2023), https://barbend.com/grass-fed-vs-regular-whey/; *see also* healthessentials, *supra* note 10 (certified grass fed cows "are only raised in open grass pastures" whereas organic beef is "is raised on a blended diet of grain and corn, and grazing on grass.").

[13] Devje, *supra* note 4.

[14] Dhiman, *supra,* note 4.

[15] Devje, *supra* note 4.

monoculture crops for feed," which are energy intensive to produce, can strip the land of its nutrients, and at least for conventional cows, requires chemical fertilizers that can seep into and pollute our water supply.[16]

36.    Fitness and health blogs further emphasize the benefits of consuming grass-fed protein. Protein from entirely grass-fed cows has more beneficial nutrients and less harmful additives than protein from conventionally raised or organic cows.[17] As such, "Grass-Fed Protein" gives the consumer peace of mind that it is a clean protein source.

37.    The belief that the Products are made with the represented amount of grass-fed protein is also reasonable given the labeling and marketing of similar products. For example, Iconic's "Protein Drink" represents that it contains 20g of grass-fed protein, and does in fact contain exactly 20g of protein from a single source: Grass Fed Milk Protein Isolate, unlike Orgain's protein blend.[18]

38.    Moreover, Orgain presents themselves as having "**relentlessly high standards** for nutrition, quality, and taste" (emphasis in original) and, claim to

---

[16] *The Green Goodness: Unveiling the Benefits of Grass-Fed Whey Protein*, Kaha Nutrition (Apr. 23, 2023), https://www.kahanutrition.com/blog/the-green-goodness-unveiling-the-benefits-of-grassfed-whey-protein/.

[17] Nader Qudimat, *Top 7 Healthiest Grass-Fed Whey Protein Powders in 2023*, FitFreak (Aug. 3, 2023), https://fitfrek.com/grassfed-protein-powders/; *11 Reasons You Should Use Grass-Fed Whey Protein Powder*, Eat This Not That! (Dec. 1, 2019, 6:09 AM), https://www.eatthis.com/grass-fed-whey-protein-powder/.

[18] Iconic, *Product Page – Chocolate Truffle*, https://www.drinkiconic.com/products/chocolate-truffle (last visited Oct. 10, 2023).

"bring [customers] the very best ingredients" with "no fake stuff. Just goodness," to "help more people live vibrant lives through the power of good, clean nutrition." "When it comes to ingredients, no filter is too fine. That's why **we source only the best grass fed whey protein** to ensure you are getting clean, high quality protein in every sip, slurp or bite."[19] Thus, it is reasonable for consumers to rely on the grass-fed protein representation because grass-fed protein is considered to be clean and the best form of protein.[20]

39.     Indeed, as illustrated in the excerpts below, the grass-fed representation is directly influencing consumers to purchase the Products. *See e.g.,* Robert H's and Karina R.'s reviews.[21]



---

[19] *Grass Fed Whey Protein*, Orgain, https://orgain.com/collections/grass-fed-whey-protein (last visited Oct 10, 2023) (emphasis added).

[20] Orgain, *Our Story*, https://orgain.com/pages/our-story (last visited Oct. 10, 2023).

[21] Orgain, *Organic Nutrition Shake Reviews*, https://orgain.com/products/organic-nutrition-shake?selling_plan=675348589 (last visited Oct. 10, 2023).

CLASS ACTION COMPLAINT

45. Consumer comments online further support Plaintiffs' allegation, showing that consumers understand grass-fed to mean that the whey in the Products is from cows fed only grass—not from cows fed grains. *See, e.g.,* responses to the question posed on Orgain's amazon page: "What is grass fed whey protein?"[22] *See image below.*

---

[22] *Orgain's Organic Nutritional Protein Shake – Vanilla Bean: Customer Questions*, Amazon, https://www.amazon.com/ask/questions/Tx3AF2DCH6BLR6M/ref=ask_d p_lsw_al_hza?asin=B00JSCDGRK (last visited Oct. 10, 2023).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Q: What is grass fed whey protein? Is the whey grazing in a pasture?

### Answer this question

**A:** As I understand it, these cows are raised in a pasture eating grass the latter part of their lives, instead of the dry feed made of a mixture of corn and other grains. Plus, during that time, no antibiotics or growth hormones. This means healthier milk/whey and meat.

 LILLY · 1 year ago

Helpful?   👍 0                                    Report

**A:** "Grass fed" means that the animal eats grass, which is it's natural diet- and not substitute commercial feed. The animal can eat it anywhere, inside or out. The benefit of grass-fed animal products is the nutrition resulting from it vs commercial feed. There is higher quality+greater nutritional content.

 Sweetie · 1 year ago

46.     As the entities responsible for the development, ingredients, manufacturing, labeling, and sale of the Products, Orgain knew or should have known that the Products are falsely and deceptively labeled. Moreover, Orgain knew or should have known that Plaintiffs and other consumers, in purchasing the Products, would rely on Orgain's front labeling and be deceived.

47.     As outlined above, consumers are willing to pay more for the Products based on the belief that the Products contain the represented amount of grass-fed

protein.[23] Plaintiffs and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that the truth about them. Thus, through the use of misleading representations, Orgain commands a price that Plaintiffs and the Classes would not have paid had they been fully informed.

48.     Therefore, Plaintiffs and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Orgain's false and deceptive practices, as described herein.

## CLASS DEFINITION AND ALLEGATIONS

49.     Plaintiffs bring this matter on behalf of themselves and those similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" or "Rule"), Plaintiffs seek to represent the following class:

> All residents of the United States who purchased any of the Products for personal, family, or household consumption and not for resale within the applicable statute of limitation period ("Nationwide Class").

50.     Additionally, as further described herein, Plaintiffs bring claims based upon state consumer protection laws on behalf of the following state class:

> All residents of California who purchased any of the Products for personal, family, or household consumption and not for resale within the applicable statute of limitation period ("California Class").

---

[23] Devje, *supra* note 4.

51.    The Nationwide and the California Class are referred to collectively as the "Class" or "Classes."

52.    Excluded from the Classes are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

53.    Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether certification is appropriate.

54.    Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical. The Products are sold throughout California/nationwide direct to consumers and through various third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiffs at this time, these Class members are identifiable and ascertainable.

55.    Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will

predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

    a. Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the labeling, marketing, distribution, and sale of the Products;

    b. Whether Defendants' use of false or deceptive labeling constituted false or deceptive advertising;

    c. Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

    d. Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

    e. Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

    f. Whether Defendants are likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

    g. Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

56. Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the

-21-

proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendants' deceptive labeling of the Products. Each instance of harm suffered by Plaintiffs and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as the Products all: (a) bear a grass-fed protein representation, and (b) do not contain the represented amount of grass-fed protein. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

57.     Superiority: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

58.     Typicality: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendants' uniform unlawful conduct as alleged herein.

59.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained

counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

60.    Defendants have also acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act
California Civil Code § 1750, *et seq.*
*(on behalf of the Nationwide Class; or in the alternative, on behalf of the California Class)***

61.    Plaintiffs repeat and reallege Paragraphs 1-60 as if fully set forth herein.

62.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, on behalf of the members of the California Class, against Defendants pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.

63.    For each class, the Products are a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiffs and members of the Classes, constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

-23-

64.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . ." By marketing the Products with the current front label, Defendants have represented and continue to represent that the Products have characteristics (i.e., each Product contains the represented amount of grass-fed protein) that they do not have. Therefore, Defendants have violated section 1770(a)(5) of the CLRA.

65.   Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with the current labeling, Defendants have represented and continue to represent that the Products are of a particular standard (i.e., each Product contains the stated amount of grass-fed protein), which they do not possess. Therefore, Defendants have violated section 1770(a)(7) of the CLRA.

66.   Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as containing the specified amount of grass-fed protein, but not intending to sell the Products as such, Defendants have violated section 1770(a)(9) of the CLRA.

67.   At all relevant times, Defendants have known or reasonably should have known that the Products did not contain the represented amount grass-fed protein, and that Plaintiffs and other members of the Classes, would reasonably and

justifiably rely on the front label grass-fed protein representation in purchasing the Product.

68. Plaintiffs and members of the Classes have justifiably relied on Defendants' misleading representations when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiffs and members of the Classes.

69. Plaintiffs and members of the Classes have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products are not as represented.

70. In accordance with Cal. Civ. Code § 1780(d), Plaintiffs are filing a declaration of venue, attached hereto as Exhibit A to this Complaint.

71. Under Cal. Civ. Code § 1780(a), Plaintiffs and Class members currently seek injunctive relief for Defendants' violations of the CLRA.

72. Plaintiffs provided notice to Defendants of their CLRA violations pursuant to Cal. Civ. Code § 1782 on October 13, 2023. If within 30 days of receipt, Defendants do not agree to rectify the problems identified herein, Plaintiffs will amend this Complaint to seek damages pursuant to Cal. Civ. Code § 1780 on behalf of themselves and the members of the Classes.

/ / /

/ / /

### SECOND CLAIM FOR RELIEF
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
***(on behalf of the Nationwide Class; or in the alternative, on behalf of the
California Class)***

73.    Plaintiffs repeat and reallege Paragraphs 1-60 as if fully set forth herein.

74.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, on behalf of the members of the California Class, against Defendants pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*.

75.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

76.    Defendants have represented and continue to represent to the public, including Plaintiffs and members of the Classes, through their deceptive labeling, that the Products contain the amount of grass-fed protein specified on the front label. Because Defendants have disseminated misleading information regarding the Products, and Defendants know, knew, or should have known through the exercise

of reasonable care that the representations were and continue to be misleading, Defendants have violated the FAL.

77.     As a result of Defendants' false labeling, Defendants have and continue to unlawfully obtain money from Plaintiffs and members of Classes.

78.     Plaintiffs request that this Court cause Defendants to restore this fraudulently obtained money to them and members of the Classes, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### THIRD CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL"),
California Business & Professions Code § 17200, *et seq.*
(on behalf of the Nationwide Class; or in the alternative, on behalf of the
California Class)**

79.     Plaintiffs repeat and reallege Paragraphs 1-60 as if fully set forth herein.

80.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class, or in the alternative, on behalf of the members of the California Class, against Defendants pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

81.     The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . ."

82.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendants' false and misleading labeling of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiffs, and members of the Proposed Classes.

83.     Under the UCL, a business act or practice is "unfair" if the Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' labeling. Deceiving consumers as to the contents of the Products is of no benefit to consumers. Therefore, Defendants' conduct was and continues to be "unfair." As a result of Defendants' unfair business acts and practices, Defendants have and continue to unfairly obtain money from Plaintiffs, and members of the Proposed Classes.

84.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendants' conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing the Products contain the amount of grass-fed

-28-

protein represented on the front label. Because Defendants misled Plaintiffs and members of the proposed Classes, Defendants' conduct was "fraudulent." As a result of Defendants' fraudulent business acts and practices, Defendants have and continue to fraudulently obtain money from Plaintiffs and members proposed Classes.

85.     Plaintiffs request that this Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the Proposed Classes, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiffs and members of proposed Classes, may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
***(on behalf of the California Class)***

86.     Plaintiffs repeat and reallege Paragraphs 1-60 as if fully set forth herein.

87.     Plaintiffs bring this claim individually on behalf of the members of the California Class.

88.     California's express warranty statute provides that: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods

shall conform to the affirmation or promise, and (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. *See* Cal. Com. Code § 2313.

89.     Defendants have expressly warranted on the Products' front labels that they contain the amount of grass-fed protein represented on the front label. However, as alleged herein, this express representation is patently false, as the Products do not contain the stated amount of grass-fed protein.

90.     These representations about the Products: (a) are affirmations of fact or promises made by Defendants to consumers; (b) became part of the basis of the bargain to purchase the Products when Plaintiffs and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the Products' descriptions.

91.     Plaintiffs and members of the proposed California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

92.     Defendants have breached the express warranties made to Plaintiffs and members of the proposed California Class by failing to manufacture the Products

with the full amount of grass fed protein represented on the front-labels of the Products.

93.     Plaintiffs and members of the proposed California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiffs and members of the proposed California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

94.     As a result, Plaintiffs and members of the proposed California Class suffered injury and deserve to recover all damages afforded under the law.

### FIFTH CLAIM FOR RELIEF
**Breach of Implied Warranty**
***(on behalf of the California Class)***

95.     Plaintiffs repeat and reallege Paragraphs 1-60 as if fully set forth herein.

96.     Plaintiffs bring this claim individually and on behalf of the members of the proposed California Class.

97.     California's implied warranty of merchantability statute provides that a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  *See* Cal. Com. Code § 2314(1).

98.     California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least . . . (f) [c]onform to the promises

-31-

or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

99.   Defendants are merchants with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

100.   By labeling the Products with the grass-fed representations, Defendants made a promise on the front label that the Products contain the amount of grass-fed protein that is represented on the front label. But the Products have not "conformed to the promises. . . made on the container or label" because they do not contain the represented amount of grass-fed protein. Plaintiffs, as well as California consumers, did not receive the goods as impliedly warranted by Defendants to be merchantable.

101.   Therefore, the Products are not merchantable under California law and Defendants have breached their implied warranty of merchantability in regard to the Products.

102.   If Plaintiffs and members of the proposed California Class had known that the Products did not contain the represented amount of protein, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiffs and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

/ / /

## SIXTH CLAIM FOR RELIEF
### Quasi Contract/Unjust Enrichment/Restitution
*(on behalf of the Nationwide Class and California Class)*

103.   Plaintiffs repeat and reallege Paragraphs 1-60 as if fully set forth herein.

104.   Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendants.

105.   As alleged herein, Defendants have intentionally and recklessly made misleading representations to Plaintiffs and members of the proposed Classes, to induce them to purchase the Products. Plaintiffs and members of the proposed Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendants. Plaintiffs and members of the proposed Classes, therefore, have been induced by Defendants' misleading and deceptive representations about the Products and paid more money to Defendants for the Products than they otherwise would and/or should have paid.

106.   Plaintiffs and members of the proposed Classes have conferred a benefit upon Defendants, as Defendants have retained monies paid to them by Plaintiffs and members of the proposed Classes.

107.   The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the proposed Classes – i.e., Plaintiffs and members of the proposed Classes did not receive the full value of the benefit conferred upon Defendants. Thus, Defendants benefitted from their misconduct of

falsely representing that the Products contained and provided a specific amount of grass-fed protein, while failing to disclose that the Products do not contain or provide the represented amount of grass-fed protein.

108.   Therefore, it is inequitable and unjust for Defendants to retain the non-gratuitous profit, benefit, or compensation conferred upon them without paying Plaintiffs, and the members of the proposed Classes, back for the difference of the full value of the benefits compared to the value actually received. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

109.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs, and members of proposed Classes, are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully pray for the following relief:

A.     Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.     A declaration that Defendants' actions, as described herein, violate the claims described herein;

C.      An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the unlawful acts described above;

D.      An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the proposed Classes as a result of their unlawful, unfair and fraudulent business practices described herein;

E.      An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendants' conduct;

F.      An award of punitive damages;

G.      An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiffs and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the Classes, hereby demand a jury trial with respect to all issues triable of right by jury.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: October 13, 2023

Respectfully submitted,
**TREEHOUSE LAW, LLP**


By:  *s/ Ruhandy Glezakos*
        Ruhandy Glezakos

Ruhandy Glezakos
Benjamin Heikali
Joshua Nassir
2121 Avenue of the Stars, Suite 2580
Los Angeles, CA 90067
Telephone: (310) 751-5116
rglezakos@treehouselaw.com

*Attorneys for Plaintiff Tricia Bennett*
*Plaintiff Mai Pham, and the*
*Putative Classes*

-36-

1
2
3
4
5
6
7
8
9
10
11
12
13

# **Exhibit A**

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DECLARATION OF TRICIA BENNETT**

I, Tricia Bennett, hereby declare:

1.  I am a Plaintiff in the action entitled *Tricia Bennett and Mai Pham v. Orgain, LLC and Nestle Health Science U.S. Holdings, Inc.* I am a competent adult over eighteen years of age and I have personal knowledge of the facts set forth herein. If called as a witness, I could testify competently thereto.

2.  I currently reside in Valley Center, California, located in San Diego County.

3.  I last purchased the chocolate flavored Kids Protein Shakes Product in or around August 2023, in this District.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on  10/12/2023  in Valley Center, California

_____
Tricia Bennett

1

DECLARATION OF TRICIA BENNETT